IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | Case No. CR 17-3403 JP |
| | ) | |
| vs. | ) | |
| | ) | |
| **RAYLAN REANO,** | ) | |
| | ) | |
| Defendant. | ) | |

**Defendant's objection to the PSR and sentencing memorandum**

Mr. Reano, through undersigned counsel, submits this sentencing memorandum in support of his sentencing currently scheduled for July 17, 2018. Mr. Reano requests that the Court vary from the applicable guideline range and impose a sentence of 18 months imprisonment.

Mr. Reano entered a plea of guilty, pursuant to a plea agreement, to the charge of involuntary manslaughter.

**I.   Background**

Mr. Reano's early life and childhood was difficult. He was born in

1

Gallup and grew up on the Pueblo of Zuni. He lived with his mother, father, and one brother. His father, an alcoholic, would frequently fight with his mother. The stress of these fights often drove Mr. Reano and his older brother Jaylen from the house. Partly because of this, Mr. Reano and his older brother became very close. Mr. Reano and his brother spent long hours together outdoors, playing and working. Mr. Reano's older brother was as much a father figure as was his real father. Jaylen helped Mr. Reano to find jobs, taught him about the outdoors and about auto mechanics.

In the past five years, Mr. Reano has suffered two devastating losses in his life. In 2014 he lost his father to a heart attack. Less than a year later, Mr. Reano suffered the second and most trying loss when his brother Jaylen was killed outside of Mr. Reano's home. Mr. Reano and his mother were the first to find Jaylen and the sudden, tragic and unexpected loss of his brother devastated Mr. Reano. He fell into a deep depression, withdrew from his family, and began drinking heavily. Mr. Reano reports that prior to his brother's death he drank, but not too excess. After his brother's death, alcohol became the only way to fill the vacuum left after the loss of his father

and brother. Mr. Reano's criminal history summary in the presentence report confirms this. Mr. Reano's problems with alcohol appear to have begun after his brother's untimely death and then, as substance abuse tends to do, ballooned into a dangerous problem beginning in 2016. This problem continued when Mr. Reano began dating N.C. in August of 2016. Alcohol was a large part of their relationship. On the night of the accident, Mr. Reano and N.C. began drinking early in the evening. They left N.C.'s home around 4 in the afternoon. N.C. was driving the car and they continued to drink until late in the evening. At some point, Mr. Reano began driving and while returning to Zuni, drove off the road, overcorrected, and flipped the car. N.C. who was not wearing a seatbelt, was ejected from the car, hit the ground, and died.

## II.     Objection to PSR

Mr. Reano objects to paragraph 79 through 81 of the PSR and the recommendation made for an upward departure based on underrepresentation of Mr. Reano's criminal history. The two convictions referenced in paragraph 80 both occurred after the incident giving rise to

this case. Those two convictions were in tribal court and for this reason Mr. Reano does not receive criminal history points for those cases. Moreover, the PSR's statement that Mr. Reano "has a continued history of arrest and conviction in the tribal courts for intoxication, escape, and theft" (PSR at ¶ 80) seems to imply that Mr. Reano's criminal history began before the incident in this case and continued after. But Mr. Reano has no criminal history dating to before the incident in this case. Rather, Mr. Reano's two other "convictions" occurred after this incident and reflect a difficult, trying time period in Mr. Reano's life that had no precedent and that he has not repeated. In light of this, an upward adjustment for underrepresentation of criminal history is not appropriate.

  **III. Request for a variance to a sentence of 18 months custody**

  Mr. Reano requests a sentence of 18 months custody and that the federal sentence be imposed to run concurrent with Mr. Reano's remaining time in tribal custody. Mr. Reano requests a sentence of 18 months custody, with that time concurrent with the remainder of his tribal time, to account for two factors. First, Mr. Reano requests a variance of 6 months to account

for the time that he has already served in tribal court for the charge of vehicular homicide. Paragraph 38 of the PSR indicates that Mr. Reano received a tribal court sentence of 180 days for this offense, which is the same conduct that gives rise to the instance offense in federal court.

"The Guidelines instruct that where a defendant has a prior offense that is relevant to the instant offense and resulted in an increase in the offense level of the instant offense, the district court should (1) 'adjust the [instant] sentence for any period of imprisonment already served on the undischarged term of imprisonment [for the prior offense] if the court determines that such period of imprisonment will not be credited . . . by the Bureau of Prison'; and (2) order that the instant sentence run concurrently with the sentence for the prior offense." *United States v. Knight*, 562 F.3d 1314, 1329 (11th Cir. 2009) (quoting U.S.S.G. § 5G1.3(b)). This is the case with Mr. Reano's conviction in tribal court for vehicular homicide. The court should vary from the applicable guideline range by six months to account for this sentence. The government does not oppose this variance.

A sentence of 18 months is also justified in this case due to Mr. Reano's

history and characteristics. Prior to the accident in this case, Mr. Reano had no criminal history and had never served a custodial term of imprisonment. The absence of any prior custodial sentence is a significant factor in Mr. Reano's background. The absence of a prior custodial sentence increases substantially the deterrent effect of a sentence. As one court has stated, "a lesser period of imprisonment is required to deter a defendant not previously subject to lengthy incarceration."[1]

    Mr. Reano's commission of this crime and its roots in the loss of his father and brother and ensuing problem with alcohol also justifies a downward variance from the guideline range. These problems, in turn, can be traced to the tragic and untimely death of Mr. Reano's father and brother. The loss of two immediate family members who played a large role in Mr. Reano's life was devastating. Mr. Reano sought to deal with the emotional loss and grief by resorting to alcohol.

    The oversized role of alcohol in his life continued when he met N.C. As the PSR points out, Mr. Reano and N.C. began drinking heavily. On the

---

[1] *United States v. Qualls*, 373 F. Supp. 2d 873, 877 (E.D. Wisc. 2005).

night of the accident, they left N.C.'s house in her car. N.C. was driving and they proceeded to drink until late in the evening. Both N.C. and Mr. Reano were very intoxicated---N.C. appears to have had an astonishingly high B.A.C. of .35g/100 m.L. and cocaine in her blood-- and had both been drinking heavily. At some point, Mr. Reano began driving and N.C. sat in the passenger side of the car without wearing a seat belt. Mr. Reano, while driving down a road, appears to have veered to the side, overcorrected, and, as the tires dug into the ground, the car flipped over. N.C., who was not wearing a seat belt, was ejected from the car and died after hitting the ground. Mr. Reano deeply regrets his actions and is devastated by what happened to N.C.

This is a very difficult case, one in which tragedy seems to beget tragedy. Mr. Reano has not sought to shirk responsibility, and has already pleaded guilty in the Court in the Pueblo of Zuni and now in federal court. His only request is that the court vary to a sentence of 18 months and to run his federal sentence concurrent with the remainder of his sentences in the tribal court in the Pueblo of Zuni.

The government does not oppose a variance of six months from the applicable guideline range and does not oppose running Mr. Reano's federal case concurrent with the remainder of Mr. Reano's remaining time in tribal custody. Mr. Reano asks that in addition to these two stipulations, that the Court consider an additional six month variance to account for the absence of criminal history in Mr. Reano's past, prior to this incident and the mitigating factors of the loss of Mr. Reano's brother and father that had such a devastating effect on him and lay at the root of his troubles with alcohol.

        Respectfully Submitted,

        **FEDERAL PUBLIC DEFENDER**
        111 Lomas NW, Suite 501
        Albuquerque, NM 87102
        (505) 346-2489

        *Electronically filed July 24, 2018*
        /s/ Aric G. Elsenheimer
        Assistant Federal Public Defender

## **CERTIFICATE OF SERVICE**

      I hereby certify that on July 24, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification to the following: Sarah Mease, Assistant United States Attorney.

      *Electronically filed July 24, 2018*
      /s/ Aric G. Elsenheimer
      Assistant Federal Public Defender